UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES CARVER, as President of the Nassau
County Police Benevolent Association,
GARY LEARNED, as President of the Superior
Officers Association of Nassau County, and
THOMAS R. WILLDIGG, as President of the
Nassau County Police Detectives' Association,
Inc.,

                    MEMORANDUM AND ORDER

        Plaintiffs,                CV 11-1614

      -against-               (Wexler, J.)

NASSAU COUNTY INTERIM FINANCE
AUTHORITY, RONALD A. STACK,
LEONARD D. STEINMAN, ROBERT A.
WILD, CHRISTOPHER P. WRIGHT,
GEORGE J. MARLIN, THOMAS W.
STOKES, in their official capacities as
directors/members of the Nassau County
Interim Finance Authority, EDWARD
MANGANO, in his official capacity as
COUNTY EXECUTIVE OF NASSAU
COUNTY, COUNTY OF NASSAU, and
GEORGE MARAGOS, in his official capacity
as NASSAU COUNTY COMPTROLLER,

        Defendants.
----------------------------------------------------------X
APPEARANCES:

    STROOCK & STROOCK & LAVAN LLP
    BY: ALAN A. KLINGER, ESQ.
    180 Maiden Lane
    New York, New York 10038

    GREENBERG BURZICHELLI GREENBERG P.C.
    BY: HARRY GREENBERG, ESQ.
    3000 Marcus Avenue, Suite 1W7

1

Lake Success, New York 11042
Attorneys for Plaintiffs

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
BY: CHRISTOPHER GUNTHER, ESQ.
Four Times Square
New York, New York 10036-6522
Attorneys for Defendants
Nassau County Interim Finance Authority and
Individual Directors/Members

JACKSON LEWIS LLP
BY: MARK L. SUSSMAN, ESQ.
58 South Service Road, Suite 410
Melville, New York 11747
Attorneys for Defendants County of Nassau
Edward Mangano and George Maragos

WEXLER, District Judge

In this action Plaintiffs, officers representing three Nassau County Police Officers and Detectives Unions (collectively the "Unions") challenge the imposition of a wage freeze imposed by Defendant Nassau County Interim Finance Authority ("NIFA" or the "Authority"). The wage freeze at issue impacts compensation agreements reached between the Unions and the County of Nassau (the "County"). In addition to naming the Authority as a Defendant, Plaintiffs also name the individual directors/members of NIFA, the County, Nassau County Executive Edward Mangano, and Nassau County Comptroller George Maragos. All individuals are named only in their official capacities.

Federal jurisdiction is based upon Plaintiffs' claim that the wage freeze violates the Contracts Clause of Article 1 of the United States Constitution. In addition to the Constitutional claim, Plaintiffs allege that the freeze was imposed in violation of the express terms of Section 3669 of the New York Public Authorities Law – the statute that authorizes imposition of a wage

2

freeze under certain circumstances. Plaintiffs seek a judgment declaring the wage freeze unlawful, and an order enjoining its implementation.

The parties have engaged in expedited factual discovery which is now complete. Presently before the court are the parties' cross-motions, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.

## BACKGROUND

### I. Facts: The Parties and the Creation of NIFA

The facts set forth below are drawn from the documents properly before the court, including the parties' statements pursuant to Rule 56.1 of the Rules of this Court.

As noted, Plaintiffs are representatives of three Nassau County Police Officers and Detectives Unions. NIFA is a corporate governmental agency and an instrumentality of the State of New York. It was created in 2000 by the Nassau County Interim Finance Authority Act (the NIFA Act"). See County of Nassau v. Nassau County Interim Finance Authority, 920 N.Y.S.2d 873, 875 (N.Y. County 2011). NIFA was created in response to the County's impending descent into insolvency. At the time, debt service in the County accounted for nearly one-fourth of the County's budgeted spending, and rating agencies downgraded the County's bond rating to near junk status. The Nassau County Legislature voted for unanimous approval of the NIFA Act as "necessary and in the public interest." County of Nassau, 920 N.Y.S.2d at 875.

Under the NIFA Act, the Authority was authorized, inter alia, to issue bonds and notes for County purposes and to oversee its finances. Id. at 876. Pursuant to the Act, the County was provided with a $100 million state subsidy ($25 million per year through 2004) as well as a grant of $5 million to assist the County in connection with its tax certiorari process. Id. To date, NIFA

has issued more than $2 billion in bonds for the County's benefit, $1.5 billion of which remain outstanding. Additionally, the Authority has also assisted Nassau by restructuring maturing debt, refinancing existing debt, and borrowing money. Nassau County, 920 N.Y.S.2d at 876.

II. NIFA Monitoring of the County's Finances: The Interim Financing and Control Periods

The NIFA Act provides for separate periods during which the Authority monitors County finances – an "interim financing period," and a subsequent period, extending to the later of the end of January 1, 2030, or the date when NIFA's bonds are discharged. The NIFA Act also allows to Authority to invoke a "control period," during which it may exercise additional enumerated powers over County finances and contractual obligations.

A. The Interim Finance Period

The NIFA Act's "interim finance period" referred initially to the time period from the enactment of the NIFA Act through 2004. During this time, NIFA issued bonds to assist in the restructuring of County debt and to address its cash flow needs. See N.Y. Pub. Auth. L. §3667. During the interim finance period, the County was required to submit annual audit reports demonstrating that its budget and financial plans comply with the NIFA Act, and that in making certain budgetary calculations, the County adhered to Generally Acceptable Accounting Principles See generally, N.Y. Pub. Auth. L.§ 3651(14). The initial interim financing period provided for in the NIFA Act was scheduled to end in 2004. That period was extended by the New York State Legislature through 2008. See id. There is no dispute that the interim finance period expired in 2008, and is therefore no longer in effect. The NIFA Act makes clear that despite the expiration of the interim financing period, the Authority remains obligated to continue to oversee the County's financing. See, e.g., N.Y. Pub. Auth. L. §3667(4) (requiring the

submission of budgets and revisions thereto so long as bonds issued by NIFA are outstanding).

  B. The Control Period

  I. NIFA's Power to Invoke a Control Period

The NIFA Act authorizes the Authority to institute, under certain limited circumstances, what is referred to as a "control period," as set forth in Section 3669 of the Public Authorities Law ("Section 3669"). N.Y. Pub. Auth. L. §3669; see N.Y. Pub. Auth. L. § 3651(5). During a control period, NIFA has the power to exercise a higher level of monitoring and control over County finances and contractual obligations. The circumstances requiring NIFA to impose a control period are set forth in Section 3669. Those circumstances include, inter alia, a determination that the County: (1) has failed to pay the principal of or interest on any of its bond or notes when due or payable; (2) has incurred a major operating funds deficit of one percent or more in the aggregate, or (3) has violated the NIFA Act in any way that "substantially impairs the marketability of the county's bonds or notes." N.Y. Pub. Auth. L. §3669 (1).

NIFA is required to impose a control period either in the event that one of the Section 3669 enumerated events has occurred, or if there exists a substantial likelihood and imminence of such occurrence. The Section 3669 control period is terminated when NIFA determines that the conditions permitting the imposition of that period no longer exist. N.Y. Pub. Auth. L. § 3669(1). Additionally, the NIFA Act provides that a control period may not continue, in any event, "beyond the later of (1) January 1, 2030 or (2) the date when all NIFA bonds are "refunded, discharges or otherwise defeased." N.Y. Pub. Auth. L. §3669(1).

  ii. NIFA's Duties and Powers During a Control Period

Section 3669(2) sets forth certain duties and powers granted to NIFA during a control

period. Among those duties are the requirement that the Authority consult with the County and prescribe the form of a financial plan. N.Y. Pub. Auth. L. §3669(2)(a). NIFA is also required, as deemed necessary, to "review the operations, management, efficiency and productivity of county operations, audit compliance with the financial plan and compliance with respect thereto." N.Y. Pub. Auth. L. §3669(2)(b). Section 3669(2)(d) sets forth particular NIFA duties with respect to prospective contracts, including the rights to review, revise and/or disprove the terms of any such contract. Id. NIFA is also granted the power to review the terms of any proposed long or short term borrowing during a control period. N.Y. Pub. Auth. L. §3669(2)(e). Additionally, subsection (2) of Section 3669 grants NIFA the broad control period power to withhold any transitional state aid from the County. N.Y. Pub. Auth. L. §3669(2)(g).

iii. NIFA's Power to Institute a Control Period Wage Freeze

In addition to the duties and powers granted under subsection (2) of Section 3669, the control period section of the NIFA Act also grants the Authority the power to suspend any wage increase previously agreed upon in connection with "collective bargaining agreements, or other analogous contracts or interest arbitration awards." N.Y. Pub. Auth. L. §3669(3). The imposition of a control period wage freeze requires more than the determination that a control period exists. Instead, in addition to the declaration of a control period, a Section 3669 wage freeze may be imposed only upon NIFA's enactment of a resolution that a wage freeze is "essential to the adoption or maintenance of a county budget or a financial plan that is in compliance with" the NIFA Act, and the Authority's separate declaration that there exists a "fiscal crisis." N.Y. Pub. Auth. L. §3669(3).

Section 3669(3) places a time limit on any wage freeze imposed during a control period.

That section, quoted in full below, refers to a wage freeze that lasts for "one year and" to a date specified by the authority as necessary to achieve the objectives of the financial plan N.Y. Pub. Auth. L. §3669(3). The final pertinent clause of Section 3669(3) states "which date shall in no event be later than the end of the interim finance period...." N.Y. Pub. Auth. L. §3669(3).

III. The Declaration of a Control Period and the Institution of the Wage Freeze

Prior to January of 2011, NIFA had never instituted a control period. It therefore never had occasion to declare existence of a fiscal crisis or invoke a Section 3669 wage freeze. On January 26, 2011, NIFA enacted Resolution No. 11, declaring a control period. The control period was stated to have been enacted pursuant to Section 3669(1), on the ground that there was a substantial likelihood and imminence of the County incurring a major operating funds deficit of one percent or more in the aggregate results of operations during 2011. On March 24, 2011, NIFA adopted Resolutions 11-303 and 11-304, declaring the existence of a fiscal crisis and suspending "all increases in salary and wages of employees of the County" set to take effect after the date of the resolutions.[1]

IV. Plaintiffs' Complaint and the Motions for Summary Judgment

In this lawsuit, the Unions do not challenge NIFA's decision to invoke a control period. Instead, Plaintiffs challenge only the decision to declare a fiscal crisis and institute a wage freeze pursuant to Section 3669(3). Plaintiffs set forth three separate causes of action. The first alleges that the wage freeze violates the Contracts Clause of Section 1 of the United States Constitution. Plaintiffs' second and third causes of action assert that the wage freeze violates the express terms of the powers set forth in Section 3669. Specifically it is argued: (1) that NIFA has no power to

---

[1] NIFA also instituted a wage freeze in 2012. The legality of that freeze is not before the court.

7

institute a wage freeze after expiration of the interim finance period, and (2) that the wages due to the Unions are the result of a state court judgment and not within the definition of "collective bargaining agreements, or other analogous contracts or interest arbitration awards," subject to Section 3669(3).

The parties have cross moved for summary judgment as to all claims. As to the Constitutional claim, the parties differ as to whether the Contract Clause is implicated and, if implicated, whether it is violated by the wage freeze. As to Section 3669, the parties differ as to the proper interpretation of the statutory language – which each side characterizes as plain in meaning. The court turns now to the merits of the motions.

## DISCUSSION

### I. Standards for Summary Judgment

A motion for summary judgment is granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is properly granted if the moving party "shows that there is no genuine dispute as to any material fact" and he is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### II. Disposition of The Motions

As noted, the motions are directed to both Constitutional and statutory questions. The court turns first to the question most appropriate for summary disposition, the statutory issue of whether the plain language of Section 3669 authorizes a wage freeze after expiration of the interim finance period.

A.  Section 3669: Propriety of A Wage Freeze After the Interim Financing Period

As noted above, Section 3669(3) refers to a time limit to be placed on any wage freeze imposed during a control period. The precise language at issue provides, in pertinent part, that any wage freeze imposed:

> shall continue until one year after the date of the order *and*, to the extent of any determination of the authority that a continuation of such suspensions to a date specified by the authority, is necessary ... such suspensions shall be continued to the date specified by the authority, *which date shall in no event be later than the end of the interim finance period* ....

N.Y. Pub. Auth. L. §3669(3) (emphasis added).

Both parties interpret the statutory language to allow NIFA to impose wage freezes that last a year or longer. At issue is whether the final clause quoted above, i.e., "which date shall in no event be later than the end of the interim finance period," applies uniformly to any wage freeze – a one year freeze or a freeze extended by NIFA to a date specified (hereinafter a "date specified" freeze).

The Unions interpret the time limiting language to apply to any wage freeze – whether one year or date specified – and conclude that such wage freezes can be imposed only during the interim financing period. Defendants, on the other hand, interpret the limiting language of the final clause to refer only to date specified wage freezes. Thus, it is argued that the language stating that the end point of a wage freeze "shall in no event be later than the interim finance period," is said to apply only to "date specified" wage freezes, which may not extend beyond the end of the interim finance period. One year wage freezes are, according to Defendants, allowed to

9

be imposed at any time, during any control period, whether imposed during or after the interim finance period.

As with any case of statutory interpretation, the court begins with the plain language of the statute. Where that language is plain and unambiguous, the court need look no further for the meaning of the words used. Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54 (1992) (when words of statute are unambiguous court must assume that "legislature says in a statute what it means and means in a statute what it says there"). The language of a statute is best understood by considering that language in the context of the overall statutory scheme. Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003). Thus, the "preferred meaning of a statutory provision is one that is consonant with the rest of the statute." Id. (citation omitted). If the plain meaning of the language can be discerned by examining that language in the context of the statute, the court need look no further that those words. Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 108 (2d Cir. 2012).

Upon consideration of the language at issue here, the court agrees with Plaintiffs' reading of the NIFA Act, and holds that the language of Section 3669 unambiguously limits NIFA's power to impose a control period wage freeze to the end of the interim finance period – which period ended in 2008. The presence of the word "and" in Section 3669(3) militates heavily in favor of the Union's interpretation. Thus, the statute states that a wage freeze may be imposed for a period of one year *and* to a date specified. The final limiting clause, which refers to "such suspensions" makes no distinctions between the two possible end dates – it states only that the end point of any freeze "shall in no event be later than the end of the interim finance period."

The Court recognizes that the Union's interpretation of Section 3669(3), which it has

10

accepted, limits the power of NIFA to impose a wage freeze to the end of the interim finance period, which period has long since expired. While this interpretation restricts NIFA's exercise of a strong power over County finances, such limitation is consistent with the NIFA Act as a whole. The statute is written to envision early and strict control over the County's finances, followed by an easing of such control over time. While the right to impose a control period may be exercised at any time (prior to January of 2030 or when all NIFA bonds are discharged), it makes sense to limit the availability of the extreme tool of the retrospective wage freeze to early in the NIFA monitoring process, when greater powers of oversight are available to the Authority. This interpretation continues to allow for the strong oversight tools set forth in Section 3669(2) to be exercised during any control period, while reserving the wage freeze tool for use in the earlier interim financing period.

The court's interpretation is further supported by the fact that the power to impose a wage freeze is set forth in a subsection of Section 3669 that is separate and apart from those delineating NIFA's many other control period rights over County finances. It is clear that such a freeze was not to be routinely imposed, even during the control period's time of heightened oversight. Instead, the wage freeze, admittedly an important tool in NIFA's arsenal, was to be imposed only upon a subsection (3) separate finding supporting a declaration of a fiscal crisis. It is not surprising that the legislature chose to further limit the wage freeze power to the interim finance period only, preferring not to extend that power to any subsequently imposed control period.

It would have been simple for the legislature to write the NIFA Act as Defendants seek to have it interpreted. Thus, the legislature could have stated that a control period wage freeze may

11

be imposed *during any control period*, for a period of one year *or during the interim finance period*, to a date specified. The NIFA Act could then have gone on to make clear that the latter type of freeze, which presumably would last for more than one year, may not continue beyond the end of the interim finance period. Such language was not, however, chosen and amounts to a strained interpretation of the NIFA Act.

In sum, the court holds that the language of Section 3669(3) is clear. It limits the imposition of wage freezes of previously bargained for rights to the time when a control period and fiscal crisis are declared during the interim finance period. Such wage freezes are neither contemplated nor allowed thereafter. It is not for the court to re-write legislation to grant NIFA powers broader than those intended by the legislature. That body chose to extend the interim financing period, and thus the power to impose a control period wage freeze, from 2004 through 2008. The legislature could have easily extended the interim finance period further, but it did not. In view of the plain language of the NIFA Act, this court, recognizing that it is without power to legislate increased powers to NIFA, holds that the Authority went beyond its statutory authorization when imposing the 2011 control period wage freeze.

III.   Additional Grounds and Stay Pending Appeal

In view of the fact that the court has found that Section 3669 does not authorize the imposition of a wage freeze beyond the interim finance period, the court need reach neither the Constitutional issue raised, nor the additional statutory ground raised by the Unions. No opinion as to either ground is expressed herein. The court grants Plaintiffs' motion for summary judgment and denies Defendants' cross-motion. The court will stay the operation of any judgment entered herein pending appeal, if any, of this matter to the Court of Appeals for the Second Circuit.

## CONCLUSION

For the forgoing reasons, the court grants Plaintiffs' motion for summary judgment and denies Defendants' motions for summary judgment. The Clerk of the Court is directed to terminate the motions docketed under docket numbers 68, 72, 79 and 83 in this matter. Plaintiff are directed to a submit an appropriate judgment on notice within two weeks of the date of this order.

SO ORDERED.

/s/
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
February 14, 2013